Jonas B. Jacobson (WA Bar No. 62890)
jonas@dovel.com
Simon Franzini (WA Bar No. 63689)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)*
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Counsel for Plaintiff*

*Admitted *Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MADISON MEADOWS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>LANDS' END, INC.,<br><br>*Defendant*. | Case No. 3:25-cv-05841-BHS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## Table of Contents

I. Introduction. ........ 1

II. Parties. ........ 3

III. Jurisdiction and Venue. ........ 3

IV. Facts. ........ 3

A. Lands' End's fake prices and fake discounts. ........ 3

B. Lands' End's website advertisements violate Washington law. ........ 15

C. Plaintiff was misled and harmed by the deceptive sales. ........ 16

D. Defendant breached its contract with and warranties to Plaintiff and the putative class. 20

E. Lands' End's false and misleading emails violate the Washington Commercial Electronic Mail Act (CEMA). ........ 21

F. Defendant's emails injure recipients and are materially deceptive. ........ 26

G. No adequate remedy at law. ........ 28

V. Class Action Allegations. ........ 29

VI. Claims. ........ 30

Count 1: Violations of the Washington Consumer Protection Act via fake discounts on product purchases ........ 30

Count 2: Violations of Washington's Commercial Electronic Mail Act via misleading emails ..... 33

Count 3: Violations of the Washington Consumer Protection Act via misleading emails ........ 34

Count 4: Breach of Contract ........ 36

Count 5: Breach of Express Warranty ........ 37

Count 6: Quasi-Contract/Unjust Enrichment ........ 38

Count 7: Intentional Misrepresentation ........ 38

Count 8: Negligent Misrepresentation ........ 39

VII. Jury Demand. ........ 40

VIII. Prayer for Relief. ........ 40



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**I. Introduction.**

1. Customers are more likely to purchase a product that is advertised as being on sale. And there is nothing wrong with a legitimate sale. But some companies take advantage of consumers through fake sales: deceptive sales that aren't really discounts off the true regular price. To protect consumers, the law prohibits such deceptive sales.

2. Defendant Lands' End, Inc. ("Lands' End") makes, sells, and markets clothing, shoes, and accessory products ("Lands' End Products" or "Products").

3. On its website, Defendant advertises discounts off the regular prices for its Products.

4. Defendant lists purported regular prices and advertises purported limited-time discounts. For example:




*Captured on November 20, 2023*[1]

5. Far from being time-limited, however, Defendant's discounts are constantly available. When one sale ends, Lands' End just advertises another. As a result, everything about Defendant's price and purported discount advertising is false. The regular prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that.

[1] From the Internet Archive, https://archive.org/.

The purported discounts Defendant advertises are not the true discounts the customer is receiving, and are often not discounts at all. Nor are the purported discounts limited in time or expiring soon—quite the opposite, they are consistently available.

6. Lands' End also advertises its fake discounts through emails sent to its customers and prospective customers. For example:




7. Plaintiff is a Washington consumer who purchased products from Lands' End's website and who was deceived by its fake sales. Plaintiff also received Lands' End's deceptive email advertisements. Plaintiff brings this case to protect Washington consumers from Lands' End's deceptive discounting and advertising practices.

## II. Parties.

8. Plaintiff Madison Meadows is domiciled in Pierce County, Washington.

9. The proposed Classes include citizens of Washington.

10. Defendant Lands' End, LLC is a Delaware company with its principal place of business at 1 Lands' End Lane, Dodgeville, WI 53595.

## III. Jurisdiction and Venue.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

12. This Court has personal jurisdiction over Lands' End. Lands' End transacts business in Washington, and advertises and sells its Products in Washington. Due to Defendant's actions, its Products have been marketed and sold to consumers in Washington, and harmed Washington consumers. Defendant has also purposefully transmitted electronic mail messages to recipients in Washington. And Plaintiff's claims arise out of Defendant's contacts with this forum. Due to Defendant's actions, Plaintiff purchased Lands' End Products in Washington, received Lands' End's emails in Washington, and was harmed in Washington.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state. Defendant advertises and sells its Products to customers in this District, serves a market for its Products in this District, and Plaintiff's claims arise out of Defendant's contacts in this forum. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

## IV. Facts.

### A. Lands' End's fake prices and fake discounts.

14. Defendant Lands' End manufactures, distributes, markets, and sells clothing, shoes, and accessory products. It sells these Products primarily through its website, www.landsend.com.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

15. Defendant persistently advertises steep discounts on its Products. These discounts offer "X%" off the regular prices Defendant advertises. Even though in truth these discounts run in perpetuity, Defendant claims they are only valid through a certain time and date. And it advertises these discounts extensively: on attention-grabbing banners, on product listing pages, next to images of each Product, on the individual product pages for each Product, during checkout, and in emails sent to its customers or prospective customers on its mailing list. For example, from the website:




*Captured on January 3, 2022*





Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066




*Captured on March 4, 2022*




*Captured on March 16, 2023*




*Captured on June 7, 2023*




*Captured July 1, 2025*




*Captured on March 29, 2024*

16. Product listings on Lands' End's website also show the sale, along with a discount price—usually in red—and a regular price (the supposed former price)—usually in strikethrough or grey. For example:




*Captured on September 12, 2023*




*Captured on March 27, 2024*





Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066




*Captured on March 27, 2024*

17. When a consumer adds an item to their cart, the cart shows the sale applied, the regular price, and the supposedly discounted price. For example:




*Captured on July 28, 2025*





Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

18. Plaintiff's counsel investigated Defendant's historical website sales using the Internet Archive's Wayback Machine (available at www.archive.org). The following table illustrates the persistence of the sales on Defendant's website since at least January 2022:

| **Date**[2] | **Advertised Sale** |
|---|---|
| January 3, 2022 | Receive up to 60% off your order! |
| February 1, 2022 | Receive up to 50% off your order! |
| March 4, 2022 | Receive up to 40% off your order! |
| April 6, 2022 | Receive up to 40% off your order! |
| May 10, 2022 | Receive up to 60% off your order! |
| June 2, 2022 | Receive up to 70% off your order! |
| July 1, 2022 | Up to 70% off your order |
| August 1, 2022 | Receive up to 70% off your order! |
| September 1, 2022 | Receive up to 50% off your order! |
| October 6, 2022 | Up to 80% off sale & clearance styles; 30% off full-price styles |
| November 1, 2022 | Receive up to 60% off your order! |
| December 1, 2022 | Receive up to 70% off your order! |
| January 16, 2023 | Receive up to 60% off your order! |
| February 1, 2023 | Receive up to 50% off your order! |
| March 1, 2023 | Receive up to 50% off your order! |
| April 2, 2023 | Receive up to 60% off your order! |
| May 3, 2023 | Receive up to 40% off your order! |
| June 1, 2023 | Receive 50% off your order |
| July 2, 2023 | Receive up to 76% off your order! |

[2] "Date" refers to the date of the archive available on the Wayback Machine. Defendant's sales last for more than one day, and usually multiple weeks such that there is almost always a percent-off sale available on Defendant's Products.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

| Date[2] | Advertised Sale |
|---|---|
| August 1, 2023 | Receive up to 75% off your order! |
| September 3, 2023 | Receive up to 40% off your order! |
| October 1, 2023 | Up to 50% off outerwear & kids, up to 40% off everything else! |
| November 15, 2023 | DAILY DEAL: 50% off pants. Up to 70% off everything else! |
| December 1, 2023 | Up to 70% off everything! |
| January 19, 2024 | Receive up to 40% off everything! |
| February 5, 2024 | Up to 40% off sitewide! |
| March 8, 2024 | Up to 40% off + FREE shipping, no minimum |
| April 1, 2024 | Up to 40% off sitewide! |
| May 2, 2024 | Up to 40% off sitewide! |
| June 11, 2024 | Up to 60% off swim + up to 40% off everything else! |
| July 3, 2024 | 50% off sitewide + 60% off swim + extra 60% off sale and clearance |
| August 4, 2024 | Up to 40% off full price styles + up to 75% off sale & clearance! |
| September 17, 2024 | 40% off sitewide |
| October 2, 2024 | 40% off sitewide |
| November 6, 2024 | Up to 60% sitewide! |
| December 7, 2024 | 50% off everything |
| January 17, 2025 | Up to 40% off, 25% off new arrivals, and 60% off sale & clearance |
| February 14, 2025 | 40% off full-price styles + up to 75% off sale & |



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

| Date[2] | Advertised Sale |
|---|---|
| | clearance |
| March 3, 2025 | 50% off select spring styles + up to 40% off full-price styles + up to 70% off Sale & Clearance |
| April 17, 2025 | 40% off your order + 20% of swim, 50% Off Sitewide |
| May 2025 | No Internet Archive available |
| June 1, 2025 | 50% Off Sitewide |
| July 1, 2025 | 50% Off Sitewide |

19. Plaintiff's counsel reviewed archives of Defendant's website to further confirm the consistency of Defendant's discounts. Plaintiff's counsel reviewed 113 archives of Defendant's website using the Internet Archive's Wayback Machine from randomly selected days in the January 2022 to July 2025 period.[3] In 108 of those screenshot archives, Defendant was advertising a purported limited-time sitewide sale on its Products. In the other 5 screenshot archives, Defendant offered significant sales on "100s" of Products or broad product categories. So to sum, Defendant offered significant discounts on its Products in 100% of the archives, and offered sitewide sales the overwhelming majority of the time.

20. As demonstrated above, Plaintiff's counsel's investigation showed that Defendant almost always offers sitewide discounts on its Products.

21. Some of Defendant's purported sales purport to require consumers to apply a coupon code to the order to get the discount. The advertised promo code is automatically applied when a customer adds an eligible item to the shopping cart. Also, as shown above, the promo code is prominently displayed throughout Defendant's website, including on the homepage and product pages. Few (if any) consumers would turn down the supposed substantial discount available through the

[3] Plaintiff's counsel selected at least two archives from each month except for February and October 2024 and April, June, and July 2025, for which only one archive was available, and May 2025, for which no archive was available.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

coupon code. So the overwhelming majority (if not all) of online sales are made using the promo code discounts (and are not sold at the supposedly regular list price).

22. Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, as depicted below, Defendant represents that its sales expire on a particular date: "Offer valid through 11:59 p.m. Central, June 21, 2022." To reasonable consumers, this means that after the specified date, Defendant's Products will no longer be on sale and will retail at their purported regular price. But immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

23. For example, on June 15, 2022, Defendant advertised a purportedly time-limited sale that was "valid through 11:59 p.m. Central, June 21, 2022."




*Captured on June 15, 2022*

24. However, on June 23, 2022, barely 24-hours after the time-limited sale was supposed to have ended, Defendant advertised the exact same sale with a new expiration date, June 30, 2022.

> **UP TO 70% OFF YOUR ORDER**
>
> Savings reflected at checkout when you enter.
> Promotion Code: **CABIN**
>
> Receive up to 70% off your order online, in-store or by phone (excludes buy more and save pricing, monogramming, gift boxing, gift cards, shipping, taxes, duties, Lands' End Business Outfitters purchases, and excluded items as marked). Specific discounts vary between styles, colors and if shipped directly from manufacturer. Promotions and products may vary in-store. Prices as marked in-store. Excludes clearance in-store. Discount will be applied at checkout. This offer has no cash value. Promotional savings may be deducted from returns. 5-7 business day delivery to most addresses. Free standard shipping is valid on orders of $99 or more (after promotions and discounts are applied) shipped to US and Canada addresses only. Offer valid through 11:59 p.m. Central, June 30, 2022.**Not valid on previous purchases or when combined with any other promotional offers.**

*Captured on June 23, 2022*

25. For all of Lands' End's sales, reasonable consumers interpret Defendant's sale advertisements to mean that they will be getting a discount "off" of the former or regular prices that Defendant formerly and usually charges for its Products. In other words, reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. This creates a sense of value and urgency: buy now, and you will receive something worth more than you pay for; wait, and you will pay more for the same thing later.

26. Reasonable consumers also believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving discounts from those listed regular prices.

27. In truth, however, Defendant always offers percent-off discounts on its Products. As a result, the list prices Defendant advertises are not actually Defendant's regular, former, or prevailing prices. And the purported discounts are illusory.

28. Defendant's purported discounts are available online and in its brick-and-mortar stores, so its advertised regular prices are not the true regular or former prices of the Products regardless of sales channel. In any event, the vast majority of Products are sold by Defendant directly to consumers via Defendant's website. As a result, the regular prices of Defendant's Products are the prices at which the Products are sold on Defendant's website (the discounted prices). And, for the reasons described

above, the regular prices Defendant advertises on its website are not the true regular prices of the Products, because the Products are almost always available at a lower, discounted price.

29. By definition, reasonable consumers expect a sale to be time-limited (otherwise, it is not a sale, it is just the regular price). Defendant further emphasizes the supposed time-limited nature of its sales by, for example, attributing them to seasons or holidays or stating specific end dates.

30. Lands' End's fake sales work because reasonable consumers are not fake sale detectives. Reasonable consumers are not monitoring the website every day for months or years. And even a consumer who occasionally checks the website would reasonably believe that there happened to be another legitimate sale. As illustrated above, discovering Defendant's deception required extensive mining of internet archives.

31. Putative class members are still not aware of Defendant's fake sale scheme. Absent class members will learn of the scheme for the first time upon court-ordered class notice in this case.

32. Discounts drive purchases. Consumers are more likely to buy a product—and willing to pay more— if they believe that the product is on sale and that they are getting a product with a higher market value at a substantial discount.[4,5]

33. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[6, 7] That a discount is ending soon is important to reasonable consumers' purchasing decisions.

---

[4] Invesp, How Discounts Affect Online Consumer Buying Behavior (https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/) (last accessed December 21, 2025).

[5] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html) (last accessed December 21, 2025).

[6] CXL, Creating Urgency, https://cxl.com/blog/creating-urgency/ (last accessed December 21, 2025) (increasing urgency by advertising limited time nature of promotion increased conversion rates nearly 300%).

[7] Adestra, Dynamic email content leads to 400% increase in conversions for Black Friday email (https://uplandsoftware.com/adestra/resources/success-story/dynamic-email-content-leads-to-400-increase-in-conversions-for-black-friday-email/) (last accessed December 21, 2025) (400% higher conversation rate for ad that increased urgency via countdown timer).



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

34. Defendant's advertisements harm consumers by inducing them to make purchases they otherwise would not have made based on the false belief that they are getting a substantial discount. In this way, Defendant's deceptive discounts artificially increase consumer demand for the Products (more consumers make more purchases because of Defendant's advertising). As demand for the Products goes up (as a result of Defendant's deceptive discount advertising), there is upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant sells more Products and charges a price premium for the Products it sells that it would not be able to charge absent the misrepresentations described above. This price premium arises as a result of Defendant's deceptive discount advertising and does not reflect a Product's higher value. So due to the fake sales, Plaintiff and the putative class paid more for the Products than they would have absent Defendant's deception, and paid more than the Products were worth.

**B. Lands' End's website advertisements violate Washington law.**

35. Washington's Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.86.020. An act is unfair if "(1) it causes or is likely to cause substantial injury that (2) consumers cannot avoid and that (3) is not 'outweighed by countervailing benefits'" to consumers or competition. *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wash. App. 594, 628 (2017). And an act is deceptive if it constitutes "'a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 50 (2009).

36. Defendant's fake discount scheme is unfair. As discussed above, Defendant advertises fake discounts and false regular prices that induce consumers to purchase its Products and cause them substantial economic injury. Reasonable consumers, who rely on Defendant to provide accurate and truthful information about sales and pricing, cannot reasonably avoid this injury. And Defendant's fake discounts offer no countervailing benefits—misrepresenting products' prices harms both consumers and honest competition.

37. Defendant's fake discount scheme is also deceptive. As described above, reasonable consumers understand Defendant's advertised discounts to mean that Products are on sale for less than



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

the regular prices. But, as explained above, this is not true: the sale is always available and the advertised discounts are fake.

38. The Federal Trade Commission's regulations on pricing confirm that Defendant's fake discount scheme is unfair and deceptive. The regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1.

**C. Plaintiff was misled and harmed by the deceptive sales.**

39. On or around May 4, 2025, while living in Lakewood, Washington, Plaintiff Madison Meadows purchased a Girls Chlorine Resistance One Piece Swimsuit and a Women's Cotton Jersey Notch Neck Dress from Defendant's website.

40. As described above, Defendant's constant sales are always prominently advertised on its website, landsend.com. Ms. Meadows saw and relied on this advertising when deciding to make her purchase.

41. When Plaintiff made her purchase, Defendant represented that customers could receive "Up to 60% off" on its Products. Defendant represented that this discount was for a limited time, and would no longer be available in the future (after May 7, 2025). Ms. Meadows read and relied on these representations when she made her purchase.

42. As described above, Defendant advertised its purported limited-time discounts throughout its website. Ms. Meadows read and relied on those representations when she made her purchase.

43. When Ms. Meadows visited the product pages for each item she purchased on May 4, 2025, Defendant advertised that the Product was on sale and that Ms. Meadows would receive a 30% discount off the regular prices of the Products if she purchased during the sale. Ms. Meadows read and relied on these representations on Defendant's product pages when she made her purchase on Defendant's website. Specifically, Defendant advertised and Ms. Meadows read and relied on the following regular prices and discounted prices advertised for each Product Ms. Meadows ordered:

| Item | Advertised Regular Price | Advertised Discounted Price |
|---|---|---|
| Girls Chlorine Resistant One Piece Swimsuit | $29.95 | $20.96 |
| Women's Cotton Jersey Notch Neck Dress | $44.95 | $31.46 |

44. Defendant repeated these price and discount representations throughout its checkout process. On the "Shopping Bag" and "Checkout" pages of Defendant's online checkout process, Defendant made the same price representations regarding the Products Ms. Meadows purchased, including the purported regular price and the purported discount price for each item. Defendant's "Shopping Bag" page also represented that Ms. Meadows was saving $22.48 due to Defendant's limited-time promotion. Ms. Meadows read and relied on these representations regarding the purported regular prices of the Products, the purported discounted prices of the Products, and her purported savings due to the special sale when making her purchase.

45. Defendant's representations on which Ms. Meadows relied on in making her purchase on May 4, 2025, were memorialized in her email confirmation. Defendant represented that each Product had the regular and discounted prices listed above, that the combined regular prices of the items she purchased was $74.90 plus shipping and tax, and that Ms. Meadows was receiving a discount of $22.48 for the Products that she purchased.

Order placed on Sunday, May 04, 2025.

Order Total = $68.66

**You saved $22.48**

| ITEM | QTY | PRICE |
|---|---|---|
| **Girls Chlorine Resistant One Piece Swimsuit**<br>Item# 553004-A6X<br>Size: L<br>Color: Hot Pink Palm<br>This item is in stock. | Qty: 1 | ~~$29.95~~<br>$20.96 |



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**Women's Cotton Jersey Notch Neck Dress**

Qty: 1 ~~$44.95~~ $31.46

Item# 551504-A62

Size: L

Color: White/berry Rouge Ditsy Lilies

This item is in stock.

| | |
|---|---|
| Subtotal | $74.90 |
| Promotional Savings | -$22.48 |
| Shipping | $9.95 |
| Sales Tax | $6.29 |
| **ORDER TOTAL** | **$68.66** |

46. Plaintiff would not have made her purchases, at the prices she paid, if she had known that the Products were not really discounted as advertised. Based on Defendant's representations described and shown above, Plaintiff reasonably understood that the Products she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published regular price, that she was receiving the advertised discount as compared to the regular price, and that the advertised discount was only available for a limited time (during the limited-time promotion). However, because Defendant almost always offers significant discounts on its Products, the regular prices Defendant advertised were not actually Defendant's regular or former prices. And the purported discounts were illusory. She also overpaid for the Products because the fake sales increased consumer demand, creating a price premium.

47. Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's advertised regular prices accurately reflected Defendant's former prices and regular prices and the market value of the Products, and that its discounts were truthful. But without a court injunction ordering Defendant to only advertise honest prices and honest sales, Plaintiff is unable to rely on Defendant's sales or supposed regular prices in the future, and so cannot purchase Products she would otherwise like to purchase.

**D. Defendant breached its contract with and warranties to Plaintiff and the putative class.**

48. When Plaintiff and other members of the putative class purchased Lands' End Products, they accepted offers made by Defendant. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised. Thus, a contract was formed at the time of each purchase.

49. Defendant's website and email confirmations list the purported regular price of the items that Defendant promised to provide (which, for Ms. Meadows, are shown above). Defendant agreed to provide a discount equal to the difference between the regular prices listed by Defendant and the prices paid by Ms. Meadows and other putative class members. For example, Defendant offered to provide (among other things) the Girls Chlorine Resistance One Piece Swimsuit it sold to Ms. Meadows with a regular price of $29.95, for a discounted price of $20.96, to therefore provide a discount of $8.99. Defendant also offered to provide the Women's Cotton Jersey Notch Neck Dress it sold to Ms. Meadows with a regular price of $44.95, for a discounted price of $31.46, to therefore provide a discount of $13.49. Defendant also warranted that the regular price and market value of the Products Ms. Meadows and putative class members purchased were the advertised list price and warranted that Ms. Meadows and putative class members were receiving a specific discount on the Products.

50. The regular prices and the market values of the items Ms. Meadows and putative class members would receive, and the amount of discount they would be provided off the regular prices of those items, were specific and material terms of the contract. These promises were also express warranties: affirmations of fact about the Products and a promise relating to the goods.

51. Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

52. Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the promised discounts. Defendant breached its express warranties for the same reasons.

**E. Lands' End's false and misleading emails violate the Washington Commercial Electronic Mail Act (CEMA).**

53. Washington's CEMA regulates deceptive email marketing. CEMA prohibits the sending of a commercial email that "[c]ontains false or misleading information in the subject line." RCW 19.190.020.

54. Violating this provision of CEMA also violates the CPA. RCW 19.190.030.

55. Advertising fake discounts in the subject line of a promotional email violates CEMA and, accordingly, the CPA. *Brown v. Old Navy LLC*, 567 P.3d 38 (Wash. 2025).

56. In addition to advertising its purported sales on its website and through its checkout process, Lands' End also advertises its fake discounts through promotional emails to Washington consumers. These emails contain subject lines that misstate the duration of its supposed sales and that misstate the discount that consumers will purportedly receive for purchasing during the sale. As a result, these promotional emails contain false or misleading information in the subject line, in violation of CEMA and the CPA.

57. Defendant sends emails these for the purpose of promoting its goods for sale and to drive sales.

58. Defendant intends to deceive recipients with its false and misleading email subject lines.

59. Defendant's email subject lines stating the supposed duration of its sales are false and misleading because, as discussed above, Defendant's sales are always available.

60. Defendant's email subject lines stating the supposed discount recipients will receive if recipients purchase during the sale are false and misleading because, as discussed above, consumers do



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

not truly receive the discounts Defendant's advertise. Instead, because discounts are always available, the supposed discounted price is just the regular price of the Products.

61. By misrepresenting the duration of its supposed sales and the amount of its supposed discounts in email subject lines, Defendant creates a false sense of urgency. Recipients who read Defendant's email subject lines believe that if they act now, they can purchase a higher value item at a limited-time discount; but if they wait, then the discount will expire and if they want to purchase a Product they will have to pay the former or regular price.

62. For example, on May 16, 2025, Defendant sent a commercial email to Plaintiff with the subject line "Tote Girls shop smart: 30%, 40%, or 50% off ends soon!".






Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

63. Reasonable recipients of this email would believe that Defendant is offering 30%, 40%, or 50% off as a time-limited promotion. They would believe that by purchasing during the promotional period, they are receiving a special discount off the regular and former price of the Products. And they would believe that if they wait too long, the sale will be over and the Products' prices will return to their regular prices. But as alleged above, such substantial discounts are in fact persistently available and are not really discounts off the true regular and former prices.

64. Just four days later, Defendant sent another commercial email to Plaintiff with the subject line "50% off your order: Memorial Day Weekend Event starts now":




65. A reasonable consumer receiving this email would believe they are getting a 50% discount off the regular and former price of Products. And they would believe that the discount is limited to the time around Memorial Day Weekend. But as alleged above, such substantial discounts are in fact persistently available and are not really discounts off the true regular and former prices.

66. For example, on June 1, 2025 (a week after the ostensibly time-limited "Memorial Day Weekend Event"), Lands' End was offering "50% Off Sitewide" as a supposed "EASTER" sale. And while the purported reason for the sale was Easter, Easter had long passed.




*Captured June 1, 2025*



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

67. A month later, on July 1, 2025, the same "EASTER" discount code was still available, along with a July 4th sale for a purported 50% Off Sitewide.




*Captured on July 1, 2025*

68. This illustrates how the emails sent to Plaintiff were misleading. The supposed discounts were not really time limited and were not really discounts off the regular prices, because they were persistently available.

69. Defendant has transmitted more emails containing similar false and misleading subject lines that are no longer in Ms. Meadows's possession, but are in the possession of Defendant. Based on the emails Defendant sent to Ms. Meadows, Defendant has sent at least thousands of emails to Washington consumers, with similar false or misleading subject lines.

70. Defendant knows, or has reason to know, that it sends its emails containing false and misleading subject lines to Washington residents. Defendant knows where recipients of its emails reside because (i) Defendant has physical addresses associated with recipients' accounts or orders; (ii) Defendant has access to data regarding the recipient including the recipient's state of residence, such as

geocoordinate and IP address tracking in Defendant's promotional emails; or (iii) information regarding the residence of the recipient was available to Defendant upon request from the registrant of the internet domain name contained in the recipient's electronic mail address.

71. Defendant also knows what sales it is offering and knows that, in truth, it is persistently offering a substantial sale on its Products.

**F. Defendant's emails injure recipients and are materially deceptive.**

72. Defendant's false and misleading emails result in actual and substantial injury to Plaintiff. It violates Plaintiff's statutory right not to receive commercial emails that contain false or misleading subject lines, which the legislature has deemed to be a "matter[] vitally affecting the public interest." RCW 19.190.030(3). Violation of a right that vitally affects the public interest results in actual and substantial harm to Plaintiff and putative class members.

73. Defendant's false and misleading emails also clog up Plaintiff and putative class members' email inboxes with spam emails, waste their limited data space, and invade their privacy.

74. Defendant's emails are also deceptive and material to reasonable consumers.

75. As described above, consumers care about receiving discounts. Receiving a good deal—a discount—is important to consumers, and material to a consumer's purchasing decisions about the Products.

76. Discounts drive purchases. Consumers are more likely to buy a product when they think they are getting a good deal. They are also willing to pay more for products if they believe the product is worth more than they are paying and that they are getting a substantial discount.

77. Research confirms that discounts are important to consumers. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[8] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of

[8] *Supra* n. 4 (Invesp, How Discounts Affect Online Consumer Buying Behavior (https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/)).



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[9]

78. Similarly, as described above, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[10]

79. When a reasonable consumer sees Defendant's email subject lines saying that the discount will end imminently, the consumer expects that if he or she misses the sale, the discount will not be available again soon. Consumers do not expect that a materially similar (or better) sale will almost immediately replace it. This creates a false sense of urgency to buy that drives sales and profits.

80. Similarly, when a reasonable consumer sees a substantial discount advertised in Defendant's email subject lines (e.g., "30% off"), they believe they are getting a discount off Defendant's regular prices. They do not expect that the supposedly discounted price is really the regular price. This misleading sense of value drives sales and profits.

81. This is why Defendant sends these emails. Defendant intends to deceive consumers into believing that its discounts are limited in time and into believing that consumers are getting a substantial discount off Defendant's regular and former prices. Defendant's deceptive email subject lines make Washington consumers more likely to open the emails, read the emails, buy the Products quickly, and be willing to pay more for the Products. This increases demand, drives sales, allows Defendant to sell more Products than it otherwise could, and allows Defendant to charge more than it otherwise could.

82. Plaintiff was not and putative class members are not aware that Defendant's email subject lines are false and misleading for the same reasons that they are not aware of Defendant's fake discounting scheme. Reasonable consumers are not monitoring Defendant's website and tracking its

---

[9] *Supra* n. 5 (RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html)).

[10] *Supra* n. 6 & 7 (CXL, Creating Urgency, (https://cxl.com/blog/creating-urgency/); Adestra, Dynamic email content leads to 400% increase in conversions for Black Friday email (https://uplandsoftware.com/adestra/resources/success-story/dynamic-email-content-leads-to-400-increase-in-conversions-for-black-friday-email/)).

discounts every day for months or years to determine whether or not the sales are real, and whether or not the email subject lines promoting those sales are true.

83. Plaintiff does not want to receive emails with false and misleading subject lines from Lands' End, though she would like to continue to receive and rely on truthful information from Lands' End regarding its Products. Due to Defendant's conduct, Plaintiff cannot tell which emails from Lands' End contain truthful information and which emails are spam with false and misleading information designed to spur her into making a purchase. So without a court order requiring Lands' End to only send honest sale emails about its sales, she cannot rely on the emails she receives.

**G. No adequate remedy at law.**

84. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff also seeks an injunction. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law. Legal remedies here are not adequate because they would not stop Defendant from continuing to engage in the deceptive practices described above. Only an injunction can remedy this threat of future harm.

85. In addition, a legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, to recover under a breach of contract theory, Plaintiff must show the existence of a contract. This is not required for the equitable claims.

86. Furthermore, to obtain a full refund as damages, Plaintiff must show that the Products she bought have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

87. Finally, Plaintiff's remedies at law are also not equally prompt or efficient as their equitable ones. For example, the need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## V. Class Action Allegations.

88. Plaintiff brings the asserted claims on behalf of the proposed Classes of:

- Consumer Class: all Washington residents who purchased discounted Lands' End Products on Defendant's website.
- Email Class: all Washington residents who received promotional emails from Lands' End with subject lines advertising sales or discounts on Lands' End Products.

89. The following people are excluded from the proposed Classes: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity & Ascertainability*

90. The proposed Classes contain members so numerous that separate joinder of each member of the Classes is impractical. There are at least thousands of Class members.

91. Class members can be identified through Defendant's sales records and electronic mailing lists and public notice.

*Predominance of Common Questions*

92. There are questions of law and fact common to the proposed Classes.

93. Common questions of law and fact to the Consumer Class include, without limitation:

(1) whether Defendant's sales were persistent;

(2) whether Defendant's advertised regular prices were really what it regularly charged for its Products;

(3) whether Defendant's sales violated Washington's consumer protection law, breached Defendant's contracts with proposed Consumer Class members, and violated





Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

its express warranties with proposed Consumer Class members;

(4) restitution or damages needed to compensate Plaintiff and the proposed Consumer Class.

94. Common questions of law and fact to the Email Class include, without limitation:

(1) whether Defendant's email subject lines are false or misleading;

(2) whether Defendant's email subject lines violate CEMA;

(3) whether Defendant's email subject lines violate the CPA;

(4) the greater of actual damages or statutory damages due to Plaintiff and the proposed Email Class.

*Typicality & Adequacy*

95. Plaintiff's claims are typical of the proposed Classes.

96. Like members of the proposed Consumer Class, Plaintiff purchased Products advertised at a discount on Defendant's website.

97. Like members of the proposed Email Class, Plaintiff received emails from Defendant that contain false or misleading subject lines regarding Defendant's discounts.

98. There are no conflicts of interest between Plaintiff and the proposed Classes.

*Superiority*

99. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of many thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

### <u>Count 1: Violations of the Washington Consumer Protection Act via fake discounts on product purchases</u>

**(By Plaintiff and the Consumer Class)**

100. Plaintiff incorporates each and every factual allegation set forth above.

101. Plaintiff brings this cause of action on behalf of herself and members of the Consumer Class.

102. Plaintiff and Consumer Class members are "persons" within the meaning of the CPA. RCW 19.86.010(1).

103. Section 19.86.020 of the CPA states, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW § 19.86.020.

104. Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW § 19.86.090.

105. Defendant engages in the conduct of trade or commerce within the meaning of the CPA. Defendant does this by selling clothing, shoes, and accessory products in a manner that directly and indirectly affects people of the state of Washington.

106. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Consumer Class members, constituting acts of unfair methods of competition and/or unfair or deceptive acts or practices, by advertising fake discounts on its website, through its checkout process, and in its stores.

Unfair Acts or Practices

107. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the Products had higher regular prices, and market values, and that customers were receiving discounts, when none of this was true. This caused Plaintiff and the Consumer Class to make purchases they otherwise would not have made, pay more for their purchases, and deprived them of their expectancy interest in receiving the Products as advertised.

108. The harm to Plaintiff and the Consumer Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Plaintiff and the Consumer Class's injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.

Deceptive Acts or Practices

109. As alleged in detail above, Defendant's representations that its Products were on sale, and that the customers were receiving discounts off the supposed regular price, were false and misleading.

110. Defendant's representations were likely to deceive, and did deceive, Plaintiff and other reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

* * *

111. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decisions.

112. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Consumer Class.

113. Plaintiff and the Consumer Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values. In addition to actual damages, Plaintiff and the Consumer Class seek treble damages, which are permitted under the CPA. Plaintiff seeks treble damages to further Plaintiff's and Consumer Class members' financial rehabilitation, encourage citizens to bring CPA actions, deter Defendant and other persons from fake discounting in violation of the CPA, and punish Defendant for its deceptive discounting practices.

114. Defendant's acts or omissions are injurious to the public interest because these practices were committed in the course of Defendant's business and were committed repeatedly before and after

Plaintiff purchased Defendant's Products. They are part of a pattern of unfair and deceptive advertisements. These actions have injured other persons, and, if continued, have the capacity to injure additional persons.

**Count 2: Violations of Washington's Commercial Electronic Mail Act via misleading emails**

**(By Plaintiff and the Email Class)**

115. Plaintiff incorporates each and every factual allegation set forth above.

116. Plaintiff brings this cause of action on behalf of herself and members of the Email Class.

117. Lands' End is a "person" under CEMA. RCW 19.190.010(11).

118. As alleged more fully above, Lands' End violated CEMA by initiating the transmission of commercial electronic mail messages that contained false or misleading information in the subject line to Plaintiff's electronic mail address.

119. Defendant sent these emails to Plaintiff for the purpose of promoting Lands' End's Products for sale.

120. Defendant knew or had reason to know that it transmitted such emails to email addresses held by Washington residents, including Plaintiff.

121. Lands' End's acts and omissions violated RCW 19.190.020(1)(b).

122. Lands' End's acts and omissions injured Plaintiff and Email Class members.

123. The balance of equities favors the entry of permanent injunctive relief against Lands' End. Plaintiff, the members of the Email Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Lands' End. A permanent injunction against Lands' End is in the public interest. Lands' End's unlawful behavior is ongoing as of the date of the filing of this pleading, so without the entry of a permanent injunction, Lands' End's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

124. Plaintiff and Email Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.020(1)(b).

**<u>Count 3: Violations of the Washington Consumer Protection Act via misleading emails</u>**

**(By Plaintiff and the Email Class)**

125. Plaintiff incorporates each and every factual allegation set forth above.

126. Plaintiff brings this cause of action on behalf of herself and members of the Email Class.

127. Plaintiff and Email Class members are "persons" within the meaning of the CPA. RCW 19.86.010(1).

128. As alleged above, Lands' End violated CEMA by initiating the transmission of commercial electronic mail messages to Plaintiff and Email Class members that contained false or misleading information in the subject line.

129. A violation of CEMA is a per se violation of the CPA. RCW 19.190.030(1).

130. A violation of CEMA establishes all elements of the CPA as a matter of law.

131. As alleged more fully above, Defendant's transmission of commercial electronic messages to Plaintiff and Email Class members that contained false or misleading information in the subject line also violates the CPA because it constitutes unfair or deceptive practices that occur in trade or commerce.

<u>Unfair Acts or Practices</u>

132. As alleged in detail above, Defendant committed "unfair" acts by falsely stating in email subject lines that it was offering a discount off the regular prices of its Products, and that customers could receive that discount only by purchasing during the sale period.

133. The harm to Plaintiff and the Consumer Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting whether Products are discounted. Plaintiff and the Email Class's injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumers only injures healthy competition and harms consumers.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

<u>Deceptive Acts or Practices</u>

134. As alleged in detail above, Defendant's representations in email subject lines that its Products were on sale, that the sale was limited in time, and that the customers were receiving discounts were false and misleading.

135. Defendant's representations were likely to deceive, and did deceive, Plaintiff and other reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

136. Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.030(3); RCW 19.190.100.

137. Defendant's acts and omissions caused injury to Plaintiff and Email Class members. In addition, violations of CEMA establish the injury and causation elements of a CPA claim as a matter of law.

138. Under the CPA, "[p]rivate rights of action may … be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. A private plaintiff may be eligible for treble damages," and "may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction) (internal citations omitted); RCW § 19.86.090.

139. Under the CPA, Plaintiff and Email Class members are entitled to seek, and do seek, the greater of actual damages and statutory damages of $500 per email that violates CEMA. In addition, Plaintiff and Email Class members seek treble damages, which are permitted under the CPA, including for CEMA violations. Plaintiff seeks treble damages to further Plaintiff's and Email Class members' financial rehabilitation, encourage citizens to bring CPA actions, deter Defendant and other persons from committing CEMA violations, and punish Defendant for its false and misleading advertising practices.

140. Plaintiff and Email Class members are also entitled to, and seek, injunctive relief prohibiting Defendant's further violations of the CPA.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**<u>Count 4: Breach of Contract</u>**

**(By Plaintiff and the Consumer Class)**

141. Plaintiff incorporates each and every factual allegation set forth above.

142. Plaintiff brings this cause of action on behalf of herself and the Consumer Class.

143. Plaintiff and Consumer Class members entered into contracts with Defendant when they placed orders to purchase Products from Defendant.

144. The contracts provided that Plaintiff and class members would pay Defendant for the Products ordered.

145. The contracts further required that Defendant provide Plaintiff and Consumer Class members with Products that have a former price, and a market value, equal to the advertised regular prices. They also required that Defendant provide Plaintiff and Consumer Class members with the advertised specified discount. These were specific and material terms of the contracts.

146. Plaintiff and Consumer Class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

147. Defendant breached the contracts with Plaintiff and Consumer Class members by failing to provide Products that had a regular price and market value equal to the advertised list price, and by failing to provide the promised discounts.

148. Plaintiff provided Defendant with notice of this breach, by mailing a notice letter to Defendant's Dodgeville headquarters and registered agent, on August 8, 2025.

149. As a direct and proximate result of Defendant's breaches, Plaintiff and Consumer Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

150. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and Consumer Class members as a result of Defendant's unlawful conduct.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**<u>Count 5: Breach of Express Warranty</u>**

**(By Plaintiff and the Consumer Class)**

151. Plaintiff incorporates each and every factual allegation set forth above.

152. Plaintiff brings this cause of action on behalf of herself and the Consumer Class.

153. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a market value equal to the regular price displayed on Defendant's website and that Plaintiff was receiving a discount off this value. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

154. Defendant also issued material, written warranties by representing that the Products were being sold at an advertised discounted price. This was an affirmation of fact about the Products and a promise relating to the goods.

155. These warranties were part of the basis of the bargain and Plaintiff and members of the Consumer Class relied on these warranties.

156. In fact, the stated market values were not the market values for Defendant's Products and the Products were not actually sold at the advertised discounts. Thus, the warranties were breached.

157. Plaintiff provided Defendant with notice of this breach of warranties, by mailing a notice letter to Defendant's Dodgeville headquarters and registered agent, on August 8, 2025.

158. Plaintiff and members of the Consumer Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranties were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranties, and/or (c) they did not receive the Products as warranted that they were promised.

159. For the breach of express warranty claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and Consumer Class members as a result of Defendant's unlawful conduct.

**Count 6: Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the Consumer Class)**

160. Plaintiff incorporates each and every factual allegation set forth above, except that this count is alleged in the alternative to allegations that an express contract existed.

161. Plaintiff brings this cause of action in the alternative to her Breach of Contract claims (Count 4), on behalf of herself and the Consumer Class.

162. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Consumer Class to purchase the Products and to pay a price premium for those Products.

163. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

164. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff are void or voidable.

165. Plaintiff and the Consumer Class seek restitution and, in the alternative, rescission.

**Count 7: Intentional Misrepresentation**

**(By Plaintiff and the Consumer Class)**

166. Plaintiff incorporates each and every factual allegation set forth above.

167. Plaintiff brings this cause of action on behalf of herself and members of the Consumer Class.

168. As alleged in detail above, Defendant made false representations to Plaintiff and Consumer Class members concerning its regular prices and discounts.

169. When Defendant made these misrepresentations, it knew that they were false at the time that they made them or acted recklessly in making the misrepresentations. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

170. Defendant intended that Plaintiff and Consumer Class members rely on these representations and Plaintiff and Consumer Class members read and reasonably relied on them.

171. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Consumer Class members.

172. Plaintiff and Consumer Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

**Count 8: Negligent Misrepresentation**

**(By Plaintiff and the Consumer Class)**

173. Plaintiff incorporates each and every factual allegation set forth above.

174. Plaintiff brings this cause of action on behalf of herself and the Consumer Class.

175. As alleged in detail above, Defendant made false representations to Plaintiff and Consumer Class members concerning its regular prices and discounts.

176. When Defendant made these misrepresentations, it should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made. Like any company, Defendant tracks its own sales and its own transactions. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

177. Defendant intended that Plaintiff and Consumer Class members rely on these representations and Plaintiff and Consumer Class members read and reasonably relied on them.

178. Defendant made these representations to induce Plaintiff and Consumer Class members to enter a business transaction.

179. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Consumer Class members.

180. Plaintiff and Consumer Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## VII. Jury Demand.

181. Plaintiff demands the right to a jury trial on all claims so triable.

## VIII. Prayer for Relief.

182. Plaintiff seeks the following relief for herself and the proposed Classes:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Classes;
- Damages, statutory damages, and treble damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.



Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

Dated: December 23, 2025

Respectfully submitted,

By: /s/ *Jonas B. Jacobson*

Jonas B. Jacobson (WA Bar No. 62890)
jonas@dovel.com
Simon Franzini (WA Bar No. 63689)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)*
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Counsel for Plaintiff*

*Admitted *Pro Hac Vice*